PEOPLE, PLAINTIFF AND APPELLEE, *v.* PADILLA, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Guayama in a Prosecution for Violation of Sanitation Bulletin No. 30.

No. 1537.—Decided June 17, 1920.

PUBLIC HEALTH—EVIDENCE.—When flour intended for making bread for sale to the public is full of worms and weevils and the bags in which it is contained are perforated so that one may see with the naked eye the excretions of the worms, a person of average intelligence may testify to that fact and the court may conclude from that testimony that the flour was at least dirty within the meaning of article 16 of Sanitation Bulletin No. 30, it not being necessary to have a chemist analyze the flour.

ID.—JURISDICTION—APPEAL.—A complaint in which it is alleged that the offense was committed ''in Arroyo, P. R., of the municipal judicial district of Arroyo'' is sufficient to determine the jurisdiction of the District Court of Guayama of the case on appeal.

ID.—JUDGMENT—AMENDMENT—APPEAL.—Whenever an error is not prejudicial to the accused the judgment may be amended by the appellate court.

The facts are stated in the opinion.

*Mr. J. J. Aponte* for the appellant.

*Mr. J. E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

The pertinent part of the complaint on which the prosecution is based reads as follows:

"That on October 7, 1918, in Arroyo, P. R., of the municipal judicial district of Arroyo, I condemned a lot of 77 sacks of flour of 100 pounds each in the bakery of the said José D. Padilla, leaving a notice to the said Padilla that he should not use that flour for making bread because, in my opinion as Food and Drugs Inspector, that flour was impure, and that I intended to send a sample of it to the Chemical Laboratory in order to make sure of its quality, and notwithstanding such notice and after having received the report of the Director of the Laboratory that the flour was not fit for use, when the Sanitation Inspector of Arroyo, José Espada Marrero, went to notify the said Padilla of the result of the analysis of his flour, Padilla answered that he had disposed of the flour. Later, on October 29, 1918, the complainant went to Arroyo to notify Padilla, and ascertain what he had done with the flour, and he said that he had mixed the flour with good flour and made bread of it, and this being a violation of Sanitation Bulletin No. 30, governing bakeries and regulating the manufacture and sale of bread in Porto Rico, and specially of section 16 thereof, I make this charge for such action as may be considered advisable."

And the law which has been violated reads as follows:

"Nobody shall sell or offer or have for sale in Porto Rico any product made of flour which is sour or musty, or if made of flour which is sour, dirty or unwholesome, or if it is mixed with salt, minerals or other ingredients, or if its condition is such that when used as food it is noxious or will seriously affect health." Section 16 of Sanitation Bulletin No. 30.

The accused having been tried and convicted in the Municipal Court of Arroyo, P. R., he appealed to the District Court of Guayama. After a trial *de novo* he was again convicted and thereupon appealed to this court.

1. The appellant maintains that the complaint is insufficient because the jurisdiction of the District Court of Guayama does not appear from its face.

This question was raised in and disposed of by the district court, correctly, in our opinion, to the effect that as it

appeared from the face of the complaint that the act complained of took place "in Arroyo, P. R., of the municipal judicial district of Arroyo" and the district court takes judicial notice that the municipal judicial district of Arroyo forms a part of the judicial district of Guayama, P. R., its jurisdiction appeared from the face of the complaint.

2. The appellant alleged that the charge against him should have been dismissed because more than 120 days elapsed between the filing of the complaint and the day of the trial. This point was brought out in the evidence. The clerk of the municipal court testified that he forwarded the record to the district court on February 12, 1919. The clerk of the district court testified that, according to the cover of the record, it was filed in the district court on February 20, 1919, and that, according to the minute-book, on March 18, 1919, the trial of the case set for that day was continued until the next term, with the consent of the defendant's attorney. The case was finally tried on June 18, 1919. These being the facts, it can not be held that the district court erred in overruling the defendant's motion.

3. The appellant maintains that he should have been acquitted for lack of evidence. We have examined the evidence carefully and although we admit that it might have been stronger, yet it contains, in our opinion, elements sufficient to support the judgment of conviction.

In order to prove that the flour was damaged an attempt was made to produce the report of the chemist of the insular laboratory. The defendant objected on the ground that it was not the best evidence and contended that the district attorney should call the chemist in person so that the defense could cross-examine him. The court sustained the objection. And it is alleged that the expert testimony not having been produced, the prosecution had failed to present any evidence on the essential point of the condition of the flour.

We do not agree to this. The bad condition of the flour could have been so evident, as it was in this case, that any person of average intelligence could testify to that fact.

Inspector Fermín Brau testified as follows:

"That he entered the bakery accompanied by sanitation inspector Francisco Picón, Jr., and after inspecting the bakery went into the room where the flour was stored and found a pile of 77 sacks which were perforated by worms, small holes being visible; that the bags were perforated and through the holes the excretions of the worms could be seen and could be taken out in the places where the larvae had gone in. I caused a sack to be opened and in the presence of the foreman of the bakery and another employee, a young man who was there, I took out some flour, spread it on a paper and showed them the worms and weevils in the flour. The foreman told me that they were not using that flour, but in the morning I had taken breakfast in town and found that the bread was bad. Then I showed them the flour and they saw the worms, and I told them that I was going to take a sample, as I did, and I told them not to use that flour for making bread and to tell Padilla so, and not to move it or touch it until I informed them of the result of the analysis."

And witness Picón testified as follows:

"That on that day they went to inspect Padilla's bakery, they went into the flour room and there found some flour which was examined in the presence of the witness; that the flour had worms in it; that he saw the worms; that a sack was taken down from a pile of 77 sacks; that Brau ordered a sack to be taken down and they opened it and found worms in it; that when he found that the flour was bad he told them not to use it, that he was going to take a sample to send to the laboratory, that he was sure it was bad, but intended to send the sample so as to make more sure of it and that he left it there condemned until he received the report from the laboratory; that this happened in the presence of the witness."

It was further argued in support of the contention that the evidence was not sufficient that the defendant was never notified and that there is no evidence to show that he made bread of the flour knowing that it was bad.

This was an establishment for selling to the public. The accused was the owner of it. The inspection was made in the bakery and in the presence of employees of the defendant. And inspector Brau testified as follows:

"I went to Arroyo. I had been informed that they had disposed of the flour, but before making a complaint I wanted to see Padilla personally. I asked him how it was possible that they had disposed of that flour which I had left there condemned, without waiting for the report from the laboratory and notwithstanding the notice I had left that it was unfit for making bread, and he said that there was not much of it; that some sacks were bad and others were not, and that he mixed it with good flour.

"Cross-examined by counsel for the defendant, he answered: Being asked whether he knew that he had disposed of the flour in the sack that was bad, he answered that he had disposed of all of it; that he told him that he had disposed of all of the flour; that he does not know whether he disposed of that sack or not, but supposes that he did; that he disposed of the lot of 77 sacks condemned by him. Asked whether this was a personal supposition, he answered: That there were 77 sacks and as none were delivered, he should have left them apart. Asked whether he stated that he had disposed of the sack which the witness opened and showed that the flour was bad, he answered: No, sir, he told me that he had disposed of all of the flour."

The admission of the defendant himself and the fact that the worms and weevils in the flour showed for themselves, are evidence that the defendant made bread of the flour knowing, at least, that it was dirty, thus committing an act against the community which should not go unpunished. In order that the offense may be committed it is not necessary that the owner of the bakery should be informed. All that is necessary is that he make bread of dirty, sour or unwholesome flour. And given the facts in this case, the defendant, independently of the action of the sanitation inspector, in making bread of the flour in question, necessarily must have known that he was doing so with flour unfit for consumption and bad for the public health.

4. The appellant alleges, lastly, that the judgment is defective because it does not state clearly the offense of which the appellant is convicted.

The judgment reads as follows:

"The oral evidence having been heard, the court, by virtue thereof enters judgment finding defendant José D. Padilla guilty of the crime of violating section 30 of the Sanitation Law and sentencing him to pay a fine of twenty-five dollars, or in default thereof to one day's imprisonment for each dollar not paid, with the costs."

The appellant himself admits that the court made a mistake in saying "section 30 of the Sanitation Law" instead of "Sanitation Bulletin No. 30." And so it did, but this is a mere mistake which could have been corrected by the district court and can now be corrected by the Supreme Court.

The appellant cites the cases of *People* v. *Campos,* 17 P. R. R. 1144, and *People* v. *Alvarez,* 21 P. R. R. 80. The latter case contains a full and ample study of the question and it is following the doctrine therein laid down that we are of the opinion in this case that the error committed by the district court can and should be corrected, for that error in no manner prejudiced the defendant, and the complaint and the evidence show sufficient data to determine with all clearness and exactness what was the actual decision of the court.

By virtue of all the foregoing we are of the opinion that the appeal should be dismissed and the judgment appealed from should be corrected in the manner indicated and

*Affirmed.*

Chief Justice Hernández and Justices Aldrey and Hutchison concurred.

Mr. Justice Wolf took no part in the decision of this case.